[Civ. No. 48325. Second Dist., Div. Four. Nov. 29, 1976.]

DAVID DORSHKIND, Plaintiff, Cross-defendant and Respondent, v. HARRY N. KOFF AGENCY, INC., et al., Defendants, Cross-complainants and Appellants.

COUNSEL

Maurice A. Holtby and Allan S. Garber for Defendants, Cross-complainants and Appellants.

Memel, Jacobs & Gersh and Jay D. Gould for Plaintiff, Cross-defendant and Respondent.

OPINION

**JEFFERSON (Bernard), J.**—This litigation started as a suit for personal injuries and property damage brought by plaintiff David Dorshkind against defendants Harry N. Koff Agency, Inc., a corporation, and Ida Koff, after a vehicle driven by Dorshkind collided in an intersection with a vehicle owned by the Koff Agency and driven by Ida Koff, on June 18, 1973. Defendants Ida Koff and the Koff Agency cross-complained, claiming personal injuries to Ida and property damage to the Koff Agency vehicle.

Both plaintiff and defendants were subsequently sued by Joyce Becker, who had been a passenger in the Koff vehicle and had sustained injuries as a result of the collision. These two actions were initially consolidated for trial.

Prior to trial, however, the actions were severed, and the Dorshkind-Koff action proceeded to trial. Trial of the Dorshkind-Koff action was by jury. Plaintiff Dorshkind was awarded a verdict for $4,240.43; defendants and cross-complainants Ida Koff and the Koff Agency received a jury

verdict against cross-defendant Dorshkind in the sum of $334.05. Defendants and cross-complainants Ida Koff and the Koff Agency have appealed.

A major point urged on appeal by the Koffs is that the trial judge erred in selecting the jury foreman instead of leaving that task to the jury itself. The closing instruction to the jury was as follows: (The judge) "You will now retire, and in this matter I am going to appoint Mrs. Parker—that is Juror No. 9—for foreman who will preside over your deliberations. As soon as nine or more of you have agreed upon a verdict, you will have it signed and dated by such foreperson and return with it to this room."

The clerk was then directed to swear in the bailiff. After the bailiff was administered the oath, one counsel remarked: "Could we approach the bench?" The jury retired, and the following colloquy was held at the bench: "MR. GOULD [plaintiff's counsel]: I was concerned as to you just appointing a foreman. I have never seen that done before and I can rely on Mr. Holtby with his advanced age over myself. [¶] MR. HOLTBY [defendants' counsel]: Thanks a lot. [¶] MR. GOULD: Did he ever see it before? I mean, I have to confess, is it proper? [¶] THE COURT: Is it improper? You brought up the subject. [¶] MR. GOULD: Is the jury not to choose their own foreman by your instructions?"

The trial judge then remarked as follows: "THE COURT: In this case I have done it because, in my opinion, there are complicated issues here, and I chose a person to be foreman who, in my opinion, appeared to be most attentive during the evidence, and in the deliberations is most able to keep the jury in line with the complicated issues, and I do it purely on a subjective analysis because I think that the popularity contest sometimes indulged in does a disservice to everyone involved, so all of you have voiced your opposition and exception."

Counsel's replies to the trial judge's statement took the following form: "MR. HOLTBY: Doesn't the BAJI instruction in regard to selecting say that they will select? [¶] THE COURT: Yes. And so the BAJI committee is—[¶] MR. GOULD: As I understand, what you just told him is she is to be the foreman the entire time. They are not to use her while selecting a new foreman. [¶] THE COURT: No, she is foreperson. [¶] MR. GOULD: That's what I thought you did."

On this appeal, defendants argue that the trial court's action of appointing the jury foreman constituted prejudicial error in violation of the provisions of the California Constitution that protect a litigant's right to trial by jury. Plaintiffs take the position that defendants have seized upon this appointment-of-foreman issue to pursue what is claimed to be an essentially frivolous appeal.

The BAJI instruction in current use in California—that deals with the question of selection of a jury foreman—is as follows: "You shall now retire and select one of your number to act as foreman who will preside over your deliberations. As soon as nine or more of you shall have agreed upon a verdict, you shall have it signed and dated by your foreman and then shall return with it to this room." (BAJI No. 15.50, "Concluding Instruction.")

The record before us indicates that this instruction was changed by the trial judge stating to the jury: "You will now retire, and in this matter I am going to appoint Mrs. Parker—that is Juror No. 9—for foreman who will preside over your deliberations. . . ." At issue, therefore, is whether the jury has an absolute right to select its foreman or whether the trial judge may exercise discretion and select a foreman for the jury.

The California Constitution states, in article I, section 16: "Trial by jury is an *inviolate right* and shall be secured to all . . . ." (Italics added.)[1] Although several sections of the Code of Civil Procedure deal with jury procedures (see Code Civ. Proc., §§ 610-619; § 610, dealing with a jury view, was repealed in 1975 and the subject covered by § 651 enacted in 1975), only section 618 refers to there being a *foreman* of the jury. Section 618 of the Code of Civil Procedure provides, in pertinent part, that "[w]hen the jury, or three-fourths of them, have agreed upon a verdict, they must be conducted into court, their names called by the clerk, or by the court if there be no clerk, and the verdict rendered by *their* foreman. The verdict must be in writing, signed by the foreman . . . ." (Italics added.) This appears to be the only statutory reference to a jury foreman in California; nothing is said, however, in this or other sections, about the method of selection of a jury foreman.

The California Civil Code, section 22.2, tells us that "[t]he common law of England, so far as it is not repugnant to or inconsistent with the

---

[1]Section 16 was added on November 5, 1974. Almost identical language, however, was formerly contained in article I, section 7, repealed on November 5, 1974.

Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State." "It is true that the common law of England, so far as it is not inconsistent with our statutes, is the rule of decision in this state. [Citation.] But all the rules of common law are subject to the provisions of our statutes; statutes in derogation of common law are not now to be strictly construed, and the provisions of codes contrary thereto are to be 'liberally construed with a view to effect its object.' (Civ. Code, sec. 4.)" (*Tennant* v. *John Tennant Memorial Home* (1914) 167 Cal. 570, 573 [140 P. 242].)

We have discovered nothing specific in our Constitution, or statutes, or decisional law concerning the selection of a jury foreman. Nor is authority easily found elsewhere. It is said that "[i]n the absence of statute it has been held not necessary that any foreman of the jury should be appointed." (50 C.J.S. Juries, § 287, p. 1081.) Some state statutes provide specifically that the jurors shall elect their own foreman. Under such a statute, it is obviously error for the court to appoint a foreman. But in *Bryan* v. *State* (1924) 97 Tex.Cr. 79 [260 S.W. 846], the court stated that such a violation of the statute, by itself, would not necessarily constitute reversible error. Other early case law notes that although the foreman is the person selected by the jurors themselves as their spokesman to announce their verdict, the foreman is not vested with any authority or control over the jury's verdict and his or her status is similar to that of any other juror. (See *Anderson* v. *State* (1941) 30 Ala.App. 124 [2 So.2d 461].)

Two fairly recent decisions in other jurisdictions have made reference to the selection of the foreman of a jury. In *Maynard* v. *Readdick* (1973) 128 Ga.App. 368 [196 S.E.2d 688], the trial court had chosen the only female juror to be the foreman; no objection was made at trial. The reviewing court refused, on that basis, to definitively rule on the correctness of the procedure, observing simply that the issue could only be determined by reference to the common law as it existed in 1776.

The issue was recently faced in a *Maine* decision, *State* v. *Inman* (1976) 350 A.2d 582, despite the fact that defendant had not objected in the trial court to the trial court's selection of the foreman. Recently adopted new court rules pertaining to criminal trials had failed to make provisions for the selection of a jury foreman. The court held that this failure should not be considered as an intention to change the time-honored practice of the jury foreman being selected by the trial judge. In

so holding, the court stated: "As the new Rules failed to make provision for the appointment of the foreman, we consider that in a criminal trial the presiding Justice, whose responsibility it is to assure the orderly conduct of the trial, has the discretion either to appoint a foreman or to direct the jurors to elect the foreman." (*Inman, supra,* 350 A.2d 582, at p. 600.)

We have been unable to find other recent authority on this subject. However, we are not persuaded that the appointment of a jury foreman is either unimportant or that it is properly a subject of judicial discretion.

Our California Constitution speaks of the right of jury trial as constituting an *"inviolate right."* The importance of the right of jury trial has been expressed in the following terms: "The right to jury trial is immemorial; it was brought from England to this country by the colonists, and it has become a part of the birthright of every free man. The right to have a trial by jury is a fundamental right in our democratic judicial system, including our federal jurisprudence. It is a right which is justly dear to the American people, and, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts. *Any seeming curtailment of this right should be scrutinized with the utmost care.* It is even said that an infringement of the laws in connection with juries requires a reversal without reference to whether the defendant is able to show any injury." (47 Am.Jur.2d (1969), "Jury," § 12, p. 635.) (Fns. omitted; italics added.)

The dim view we take of any interference with the working of a jury is reflected in the commonly used BAJI Instruction No. 15.20, which provides: "I have not intended by anything I have said or done, or by any questions that I may have asked, to intimate or suggest how you should decide any questions of fact submitted to you, or that I believe or disbelieve any witness. [¶] If anything I have done or said has seemed so to indicate, you will disregard it and form your own opinion."

Thus are juries cautioned in California not to take their cues from the trial judge. It is well understood by most trial judges that it is of the utmost importance that the trial judge not communicate in any manner to the jury the judge's opinions on the case submitted to the jury, because juries tend to attach inflated importance to any such communication, even when the judge has no intention whatever of influencing a jury's determination.

In another context, the California Supreme Court has stated: " 'The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury guaranteed by the Constitution.' " (See *Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 110 [95 Cal.Rptr. 516, 485 P.2d 1132].)

We regard the concept of impartiality as necessarily an integral part of the constitutional concept of the right of a jury trial to remain inviolate. It is to be strived for, not only in the selection of jurors, but in their treatment as the case proceeds. If the trial judge is free to select the foreman of the jury, there will undoubtedly be some jurors who feel a certain amount of deference is due to the opinion of the person selected by the trial judge, regardless of the other instructions routinely given, which remind the jury that each juror has the right and the responsibility to arrive at his or her free choice in the matter at hand, without being influenced by any conduct—verbal or nonverbal—from the trial judge.

■ We hold, therefore, that a trial jury's selection of its own foreman is mandated by article I, section 16 of the California Constitution in its requirement that "[t]rial by jury is an *inviolate right* and shall be secured to all . . . ." (Italics added.)

A trial judge's selection of a jury foreman constitutes an inherent danger to the inviolateness of the jury system. In the case at bench, this danger is reflected in the remarks of the trial judge to counsel, although made outside of the presence and hearing of the jury. These remarks indicate a deliberate intention by the trial judge to influence the deliberations of the jury. Thus, the trial judge explained his reasons for selecting the jury foreman as follows: "In this case I have done it because, in my opinion, there are complicated issues here, and I chose a person to be foreman who, in my opinion, appeared to be most attentive during the evidence, *and in the deliberations is most able to keep the jury in line with the complicated issues,* and I do it purely on a subjective analysis because I think that the popularity contest sometimes indulged in does a disservice to everyone involved, so all of you have voiced your opposition and exception." (Italics added.)

■ Defendants contend that it was error for the trial judge to permit the deposition of Joyce Becker to be read to the jury because deponent's unavailability as a witness was not established by evidence that did not run afoul of the hearsay and other exclusionary rules of evidence. We

agree. (See Jefferson, Cal. Evidence Benchbook (1972), § 2.7, pp. 52-53.)

▮ However, we need not discuss this point further in view of the fact that we adopt the premise that selection by a trial judge of the jury foreman constitutes reversible error without reference to proof of actual prejudice. Whether, on any retrial, it will be necessary to use Joyce Becker's deposition, we cannot know. If plaintiff elects to use that deposition, its admissibility will turn on the showing made at any new trial.

The judgment appealed from is reversed.

Kingsley, Acting P. J., and Dunn, J., concurred.