ELMER RAY JORDAN, JR. V. THE STATE OF TEXAS

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-01-530–CR

ELMER RAY JORDAN, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 362
ND
 DISTRICT COURT OF DENTON COUNTY

------------

OPINION

------------

I. Introduction

On December 10, 2000, the Denton County Narcotics Task Force was conducting bus interdictions at the bus terminal in Denton County.  During one interdiction on that date, appellant Elmer Ray Jordan, Jr. was arrested after his consent to being patted down by Officer Mike Martin led to the discovery of 988.76 grams of cocaine.  Appellant was charged with and pleaded guilty to possession of a controlled substance with intent to deliver and pleaded not true to two prior felony enhancement paragraphs.  The jury found appellant guilty of the primary offense, found the enhancement paragraphs true, and sentenced appellant to life in prison.  

In four points, appellant argues that: (1) the trial court erred by failing to admonish him of the entire range of punishment; (2) there was no evidence to prove that the second prior felony conviction in the enhancement paragraph of the indictment was for an offense committed after the first prior felony conviction became final; (3) he was denied the effective assistance of counsel as a result of his trial attorney’s failure to object to an improper punishment charge and to file a motion to suppress; and (4) he was denied his constitutional right against self-incrimination when the trial court failed to admonish him of his Fifth Amendment right before he testified at punishment.  We reverse and remand for a new trial on punishment.

II.  Admonishment of Proper Punishment Range

In his first point, appellant argues that the trial court erred in failing to admonish him of the entire range of punishment, violating his constitutional rights and article 26.13 of the code of criminal procedure.
  Tex. Code Crim. Proc. Ann.
 art. 26.13 (Vernon 1989 & Supp. 2003).  The range of punishment for possession of a controlled substance with intent to deliver, enhanced by two prior felony convictions, is twenty-five to ninety-nine years to life in prison.  
Tex. Penal Code Ann.
 § 12.42(d) (Vernon 2003); 
Tex. Health & Safety Code Ann.
 § 481.112(f) (Vernon 2003).  Before trial, appellant was admonished in writing of the proper range of punishment for possession of a controlled substance with intent to deliver, enhanced by two prior felony convictions.  
The written admonishments signed by appellant informed him that the punishment range for possession of a controlled substance with intent to deliver is “life or for any term of not more than 99 years or less than 15 years” and that “a fine may be imposed not to exceed $250,000.00.”  The written admonishments also informed appellant that “
[w]ith 2 enhancements
 the punishment range” is imprisonment for “life, or for any term of not more than 99 years or less than 25 years.” 
 Appellant signed the admonishments, stating he understood the punishment range and the consequences of pleading guilty. 
See
 
Tex. Code Crim. Proc. Ann.
 art. 26.13(d) (stating admonishments may be given in writing).  
The written admonishments were incomplete, however, because they failed to inform appellant regarding the range of punishment for
 possession of a controlled substance with intent to deliver, enhanced by only one prior felony conviction.  
See Gonzalez v. State
, 746 S.W.2d 902, 904 (Tex. App.—Corpus Christi 1988, no pet.) (“When a defendant pleads guilty to an indictment that alleges prior convictions for enhancement purposes, the accused should be admonished of the full range of punishment available through enhancement.”).   Before accepting appellant’s guilty plea, the trial court informed appellant in open court that the range of punishment was fifteen to ninety-nine years to life in prison with an optional fine up to $250,000. Appellant stated he understood the charges against him, the punishment range, and the consequences of his plea, and then he pleaded guilty to the primary offense.  The trial court did not orally admonish appellant regarding the range of punishment for the primary offense enhanced by one or two prior felony convictions.  As a result, the trial court’s oral admonishments were also incomplete.

Although the written and oral admonishments were incomplete, the trial court substantially complied in informing appellant of the proper punishment range.  
See Gonzalez
, 746 S.W.2d at 904 (“[W]here the record indicates that the defendant received an admonishment with respect to punishment, although not a complete one, there is a prima facie showing that the plea of guilty was knowingly and voluntarily made.”).  Thus, there is a prima facie showing of a knowing and voluntary plea, and the burden shifts to appellant to prove that he did not understand the consequences of his plea such that he suffered harm.  
See Ex parte Gibauitch
, 688 S.W.2d 868, 871 (Tex. Crim. App. 1985);
 Dorsey v. State
, 55 S.W.3d 227, 235 (Tex. App.—Corpus Christi 2001, no pet.).
 
 
Appellant has failed to demonstrate this fact.  Accordingly, we overrule appellant’s first point.

III.  Proof of Enhancement Allegations

In appellant’s second point, he argues there was no evidence to prove that the second prior felony conviction in the enhancement paragraph was for an offense committed after the first prior felony conviction became final, as required by section 12.42(d) of the penal code.  
Tex. Penal Code Ann.
 § 12.42(d); 
see also Young v. State
, 14 S.W.3d 748, 753 (Tex. Crim. App. 2000) (“When reviewing the legal sufficiency of the evidence [at punishment], we view all the evidence in the light most favorable to the verdict to see whether any rational fact-finder could find the essential elements of the crime beyond a reasonable doubt.”).  The State concedes that there was no evidence showing that the second felony was committed after the first prior felony conviction became final.  The State argues, however, that appellant did not suffer harm as a result of this lack of evidence because the jury assessed punishment at life, indicating a desire not to punish in the low range of punishment.  Thus, according to the State, it is doubtful that the jury would have assessed a lighter punishment had it found the second enhancement offense not true.  Not only do we find this reasoning unconvincing, but we do not believe that a harm analysis is appropriate in this context.  

The State had the burden to prove beyond a reasonable doubt that appellant committed the primary offense, as well as the two enhancement offenses, as alleged in the indictment.  
See Ex parte Augusta
, 639 S.W.2d 481, 484-85 (Tex. Crim. App. 1982), 
overruled on other grounds
, 
Bell v. State
, 994 S.W.2d 173 (Tex. Crim. App. 1999); 
Williams v. State
, 980 S.W.2d 222, 226 (Tex. App.—Houston [14
th
 Dist.] 1998, pet. ref’d).  The State admits that it failed to prove that appellant committed the second previous felony offense after his conviction for the first previous offense became final, but argues that a harm analysis should be conducted.  
Tex. Penal Code Ann.
 § 12.42(d).  While some courts of appeals have conducted a harm analysis after determining that insufficient evidence existed under these circumstances, the Texas Court of Criminal Appeals has not.
  Compare Williams v. State
, 837 S.W.2d 759, 764 (Tex. App.—El Paso 1992, no pet.) (determining harm existed where State failed to prove that second offense occurred after first); 
Patterson v. State
, 723 S.W.2d 308, 316 (Tex. App.—Austin 1987) (same),
 aff’d on other grounds
, 769 S.W.2d 938 (Tex. Crim. App. 1989), 
with McCrary v. State
, 604 S.W.2d 113, 116 (Tex. Crim. App. 1980) (reversing and remanding for new trial where no evidence that second enhancement offense occurred after first; no harm analysis conducted); 
Williams v. State
, 596 S.W.2d 903, 904 (Tex. Crim. App. 1980) (same); 
Hickman v. State
, 548 S.W.2d 736, 737 (Tex. Crim. App. 1977) (same); 
see also Johnson v. State
, 784 S.W.2d 413, 414-15 (Tex. Crim. App. 1990) (reversing and remanding where State failed to prove that one of the enhancement offenses had become final; no harm analysis conducted). 

Although the State recognizes that the court of criminal appeals in “earlier” cases similar to this one has not conducted a harm analysis, the State, relying on 
Ford v. State
, contends that error connected to a statutory violation must be evaluated for harm.  73 S.W.3d 923, 924 (Tex. Crim. App. 2002).  The court in 
Ford
, however, applied a harm analysis to the trial court’s failure to conduct a jury shuffle as required by statute.  
Id
.  In this case, we are confronted with the State’s failure to meet its evidentiary burden of proof, not trial court error.  Because the State failed to meet its evidentiary burden of proof, there was legally insufficient evidence to support the jury finding that appellant committed the second enhancement offense after his conviction for the first enhancement offense became final.
(footnote: 1) 
 Thus, we sustain appellant’s second point.

IV.  Ineffective Assistance of Counsel

In appellant’s third point, he raises two arguments.  His first argument raises potential error at punishment.  In light of our disposition of point two, however, a new punishment hearing will be required, making it unnecessary for us to address this part of point three.  
See 
Tex. R. App. P.
 47.1.  In the second part of point three, however, appellant contends his attorney was ineffective for failing to file a motion to suppress the seized cocaine.  Because this complaint raises potential error that could have affected the guilt-innocence phase of trial, we shall address it.

An appellant claiming ineffective assistance for failure to file a motion to suppress is required to prove that the motion would have been granted.  
Jackson v. State
, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); 
LaFleur v. State
, 79 S.W.3d 129, 137 (Tex. App.—Texarkana 2002, no pet.).  The record in this case shows that appellant consented to a pat down of his person during a police bus interdiction at a bus station in Denton County.  Plain-clothes officers conducted the interdiction.  They were not displaying guns or badges. Officer Michael Martin entered the bus, went to the back of it, and began making contact with the passengers, asking them in a nonthreatening manner if they would mind talking to him.  Although Officer Martin testified that the passengers were free to leave at any time and that the officers left the aisle open, there is no evidence that Officer Martin informed any of the passengers that they could refuse to talk to the officers.  Officer Martin eventually made his way to appellant.  After informing appellant that he was a police officer and displaying his badge to appellant, Officer Martin asked appellant if he minded talking to him.  While talking to appellant, Officer Martin noticed that appellant’s hands were shaking and saw a square bulge in front of appellant’s pants, which, based on Officer Martin’s training and experience, looked like contraband.  Officer Martin then asked appellant if he could pat him down, and appellant agreed.  As Officer Martin felt the ends of the square bulge, appellant stated, “You got me, man.”  Appellant was escorted off the bus, and the bulge was later determined to be cocaine. 

Random suspicionless questioning of bus passengers on a bus at a bus station is not a per se violation of the passengers’ Fourth Amendment rights.  
Florida v. Bostick
, 501 U.S. 429, 439-40, 111 S. Ct. 2382, 2388-89 (1991); 
State v. Hernandez
, 64 S.W.3d 548, 550 (Tex. App.—Texarkana 2001, no pet.).  When a defendant voluntarily consents to a search, that search is legal.  
Harris v. State
, 994 S.W.2d 927, 930 (Tex. App.—Waco 1999, pet. ref’d).  But if a reasonable person under the circumstances would not feel free to leave or to deny consent, then the search is illegal.  
See State v. Velasquez
, 994 S.W.2d 676, 678 (Tex. Crim. App. 1999) (“[I]ssue is ‘whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.  [The test] applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus.’”) (quoting 
Bostick
, 501 U.S. at 439-40, 111 S. Ct. at 2389)).  The officers are not required to advise a suspect of the right to refuse consent to a search.  
Velasquez
, 994 S.W.2d at 679; 
Hernandez
, 64 S.W.3d at 551.

Based on the evidence available, we conclude that a motion to suppress would not have been successful. 
 See
 
Hernandez
, 64 S.W.3d at 552. The police entered the bus at a bus station.  
See id.
  Once on the bus, the police did not intimidate the passengers.  
See id.
  They were in plain clothes, and their guns were not showing.  
See id.
  Only Officer Martin interviewed appellant, and there is no evidence suggesting that Officer Martin coerced appellant into cooperating, intimated that appellant had to cooperate, or prevented appellant from leaving.  
See id.
 Appellant then consented to the pat down.  
See id.
 Consequently, we hold appellant’s trial counsel was not ineffective for failing to file a motion to suppress.  We overrule that portion of point three regarding counsel’s failure to file a motion to suppress. 

V.  Conclusion

Generally, when there is legally insufficient evidence 
to support a conviction as alleged in the indictment, we reverse and render the judgment that should have been rendered.  
See
 
Tex. R. App. P.
 43.2(c), 51.2(d); 
Burks v. United States
, 437 U.S. 1, 16-18, 98 S. Ct. 2141, 2150-51 (1978); 
Greene v. Massey
, 437 U.S. 19, 24-25, 98 S. Ct. 2151, 2154-55 (1978); 
Clewis v. State
, 922 S.W.2d 126, 133-34 (Tex. Crim. App. 1996).
  We do not determine whether harm occurred
.  In this case, however, only the jury’s decision on punishment is affected by the lack of evidence regarding when the second enhancement offense was committed.  Thus, we will reverse the judgment and remand for a new trial on the issue of punishment only.
(footnote: 2) 
 
Cf.
 
Tex. Code Crim. Proc. Ann. 
art.
 44.29(b) (Vernon Supp. 2003) (“If the court of appeals . . . awards a new trial to a defendant . . . only on the basis of 
an error or errors
 made in the punishment stage of trial, the cause shall stand as it would have stood in case the new trial had been granted by the court below, except that the court shall commence the new trial as if a finding of guilt had been returned and proceed to the punishment stage of trial.”) (Emphasis added)
;
 Dixon v. State
, 932 S.W.2d 567, 571 (Tex. App.—Tyler 1995, no pet.) (relying on article 44.29(b) and holding that reversal and remand for new punishment
 was required where there was insufficient evidence to support punishment due to lack of plea to enhancement allegations).
  Because appellant’s remaining arguments involve alleged error at punishment, we do not need to address them as a result of our ruling on point two.  
See
 
Tex. R. App. P. 47.1.

Having determined that no error occurred at the guilt stage of trial, but holding that there is insufficient evidence to support the jury’s finding of true to the second enhancement allegation, we reverse the trial court’s judgment and remand for a new trial on punishment. 

PER CURIAM

PANEL F: DAY, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED:  June 5, 2003

FOOTNOTES
1:
In support of its contention that no harm occurred, the State refers us to evidence of appellant’s other criminal convictions, which were admitted at punishment but not alleged in the indictment, to support its conclusion that the jury might have still sentenced appellant to life even in the absence of proof that the second enhancement offense was committed after appellant’s conviction for the first became final.  This evidence, however, does not prove the enhancement allegation, and it should not be used to justify a punishment that might have been different had the jury properly found the second enhancement allegations not true.  Furthermore, even if we were to apply a harm analysis, it is impossible to know for certain how the jury would have sentenced appellant had there only been a finding of true to the first enhancement allegation, even with the admission of evidence of other prior offenses.

2:
Even if we were required to conduct a harm analysis, based on the evidence before us, we cannot conclude, as the State does, that the jury would not have sentenced appellant to less than life imprisonment had only one prior enhancement offense been alleged and found true.  Moreover, the Texas Court of Criminal Appeals has previously reversed life sentences under similar circumstances without addressing harm or the jury’s likelihood of reaching the same result in the absence of proof of when the second enhancement offense was committed.  
See Williams
, 596 S.W.2d at 903-04 (reversing and remanding for new trial where defendant received life sentence and there was no evidence that second enhancement offense was committed after first enhancement offense); 
Kessler v. State
, 514 S.W.2d 260, 261-62 (Tex. Crim. App. 1974)
 (reversing and reforming life sentence to twelve years’ imprisonment where no evidence that second enhancement offense was committed after first enhancement offense).